```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
HARJINDER BHATTI,                                         :
                                                          :
                              Plaintiff,                  :          MEMORANDUM AND ORDER
                                                          :          18-cv-03139 (DLI) (SJB)
                -against-                                 :
                                                          :
PHYSICIANS AFFILIATE GROUP OF                             :
NEW YORK, P.C.,                                           :
                                                          :
                              Defendant.                  :
----------------------------------------------------------x
```

**DORA L. IRIZARRY, United States District Judge:**

On May 29, 2018, Plaintiff Harjinder Bhatti ("Plaintiff") filed this retaliation action against her former employer, Physicians Affiliate Group of New York, P.C. ("PAGNY" or "Defendant"), alleging violation of Title VII of the Civil Rights Act of 1962, 42 U.S.C. §§ 2000 *et seq.*, New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*, and New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§8-101 *et seq. See*, *generally*, Compl., Dkt. Entry No. 1. Following the close of discovery, Defendant moved for summary judgment. *See*, Def.'s Notice of Mot. for Summ. J., Dkt. Entry No. 23; Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def. Mem."), Dkt. Entry No. 25. Plaintiff opposed the motion. *See*, Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. ("Pl. Opp'n"), Dkt. Entry No. 27. Defendant replied. *See*, Def.'s Reply Mem. of Law in Supp. of Def.'s Mot. for Summ. J. ("Def. Reply"), Dkt. Entry No. 29. For the reasons set forth below, Defendant's motion is granted in its entirety.

## BACKGROUND

The following relevant facts are taken from the parties' Local Civil Rule 56.1 statements, affidavits, and exhibits. *See*, Def.'s Local Rule 56.1 Statement of Undisputed Material Facts in Supp. of Mot. for Summ. J. ("Def. 56.1"), Dkt. Entry No. 26-2; Pl.'s Counterstatement of Facts

Pursuant to Local Rule 56.1 ("Pl. 56.1"), Dkt. Entry No. 26-2.  Unless otherwise noted, these facts are not in dispute.  As it must, the Court has considered only facts recited by Plaintiff and Defendant in their respective Rule 56.1 statements that are established by admissible evidence and disregarded conclusory allegations and legal arguments contained therein.  *See*, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]here there are no[] citations or where the cited materials do not support the factual assertions in the [s]tatements, the Court is free to disregard the assertion.") (internal quotation marks and citations omitted).

In this action, Plaintiff asserts a retaliation claim only.  *See*, Compl. at ¶¶ 35-42; Pl. Opp'n at 1 n.1 ("Plaintiff's claims in this matter have always been for retaliation, and not discrimination.").  Plaintiff alleges that Defendant retaliated against her for filing a charge of gender discrimination with the Equal Employment Opportunity Commission ("EEOC") and an employment discrimination lawsuit against Corizon Health, Inc. ("Corizon") on April 9, 2014 and August 28, 2015, respectively.  *See*, Pl. Opp'n at 2, 16-19.

## I.   Plaintiff's Employment at Corizon

From 2001 to December 2015, Plaintiff was employed as a staff physician by Corizon, a company responsible for providing medical care at Rikers Island Correctional Facility ("Rikers"). Def. 56.1 at ¶ 7.  During this period, Plaintiff received annual performance evaluations based on five components:  Job Knowledge, Quantity, Quality, Communication Skills, and Punctuality and Attendance. *Id*. at ¶ 9.  Between 2001 and 2009, Plaintiff received overall ratings of either "Above Average" and "Average" in her evaluations.  *Id*. at ¶¶ 10-15, 17; *See also*, Pl. 56.1 at ¶¶ 10-15, 17.

In 2010, Plaintiff was assigned to work at the Otis Batum Correctional Center ("OBCC") at Rikers under the supervision of Dr. Michael Latunji ("Latunji"), the OBCC Site Medical Director.  Def. 56.1 at ¶ 19.  Physician duties at OBCC consisted of providing medical services to

inmates and Department of Corrections ("DOC") staff. *Id*. at ¶ 21. While at OBCC, Plaintiff also worked with Ofelia Balilo ("Balilo"), the OBCC Health Services Administrator ("HSA"), a non-medical staff member in charge of scheduling and staffing. *Id*. at ¶ 36. In her evaluation dated April 20, 2010, Plaintiff received an overall rating of "Outstanding" from Latunji. *See*, Corizon Evaluations, Ex. G to Blair Decl., Dkt. Entry No. 24-7, at 20-21.

According to Plaintiff, on September 20, 2010, she had a "serious disagreement and management problem" with Latunji when he delayed sending a patient with a hip fracture to the hospital emergency room. *See*, Plaintiff's Rebuttal to July 25, 2014 Corrective Action Memorandum ("Corrective Action Memo Rebuttal"), dated August 4, 2014, Ex. I to Decl. of Amanda M. Blair in Supp. of Def.'s Mot. for Summ. J. ("Blair Decl."), Dkt. Entry No. 24-9. In her evaluation dated January 20, 2012, which covered the calendar year 2011, Plaintiff received an overall rating of "Above Average." *See*, Corizon Evaluations, Ex. G to Blair Decl., at 22-23. For reasons unknown to the Court, there is no record of Plaintiff having received annual evaluations for 2012 and 2013. *See*, Def. Reply at 7.

### A. Plaintiff's EEOC Charge

On April 9, 2014, Plaintiff filed a gender discrimination charge with the EEOC (the "EEOC charge"). Def. 56.1 at ¶ 33; *See also*, EEOC Charge of Discrimination ("EEOC Charge"), dated April 9, 2014, Ex. J to Blair Decl., Dkt. Entry No. 24-10, at 1-2. Plaintiff claimed that Corizon failed to interview or hire her for a Physician Central Intake position. *See*, EEOC Charge, at 1. Plaintiff alleged that she possessed qualifications and experience superior to those of the male physicians selected to fill the full time vacancies and that Corizon's senior management staff at Rikers was exclusively male. *Id.* at 1-2. Plaintiff specifically identified Dr. Jay Cowan ("Cowan"), Regional Medical Director, Dr. Luis Cintron ("Cintron"), Regional Assistant Medical Director,

3

Yussuf Fazal, Regional Vice President of Operations, and Latunji as members of the senior management staff. *Id*. However, Plaintiff conceded that Latunji was not involved in the selection process for the Physician Central Intake position. Def. 56.1 at ¶ 35. According to Latunji, he did not know about Plaintiff's EEOC charge. *Id*. at ¶ 34. Plaintiff did not know whether Latunji ever was aware of the EEOC charge. Pl. Dep., Ex. C to Blair Decl., Dkt. Entry No. 24-3, at 50. In addition, Latunji and Plaintiff never discussed the EEOC charge. Def. 56.1 at ¶ 35; Pl. Dep. at 50.

For her evaluation dated December 15, 2014, Plaintiff received an overall rating of "Average." *See*, Corizon Evaluations, Ex. G to Blair Decl., at 24-25. Plaintiff received an "Above Average" rating for the Job Knowledge component and "Average" ratings for the Quantity and Quality components. *Id*. at 24. Plaintiff received "Below Average" ratings for the Communication Skills and Punctuality and Attendance components. *Id*. at 24-25. Latunji commented in the evaluation that Plaintiff needed to work on her "communication skills with both coworkers and the management team." *Id.* at 25. Latunji added that Plaintiff "tend[ed] to be argumentative when an obvious constructive criticism [was] brought to her attention" and that she needed to "improve on her time management" and "to be a team player." *Id.*

In her January 26, 2015 letter addressed to the Director of Human Resources at Corizon, Plaintiff contested her 2014 evaluation. *See*, Pl.'s Rebuttal to 2014 Corizon Evaluation, dated January 26, 2015, Ex. M. to Blair Decl., Dkt. Entry No. 24-13. She claimed that the "less than favorable ratings were given in retaliation for filing an employment discrimination charge with EEOC in 2014." *Id*. Plaintiff specified that her Communication Skills rating of "below average" was "at odds with past years because [she] affirmatively challenged the work place discrimination" and that her "below average" Punctuality and Attendance rating was "partly the result of enhanced security measures." *Id.*

4

### B. Plaintiff's *Corizon* Lawsuit

After receiving a right to sue letter from the EEOC on June 2, 2015, Plaintiff brought a discrimination and retaliation action against Corizon on August 28, 2015 (the "*Corizon* lawsuit"). *See*, *Bhatti v. Corizon Health, Inc.*, Case Dkt. No. 15-cv-05044 (LDH) (CLP); *See also*, Pl.'s Compl. Against Corizon ("Corizon Compl."), Ex. F to Blair Decl., Dkt. Entry No. 24-6, at ¶ 4. Plaintiff claimed that she had been denied the Physician Central Intake Position at Rikers' West Facility Jail, while eleven men and one woman were hired. Corizon Compl. at ¶ 33. Plaintiff also claimed that she had received disciplinary notices, dated July 23, 2014 and August 15, 2014, in retaliation for filing the EEOC charge. *Id.* at ¶¶ 20-23. Additionally, Plaintiff alleged that, as part of the retaliation, Latunji gave her an overall rating of "Average" with two "Below Average" ratings for the Communication Skills and Punctuality and Attendance components in her December 15, 2014 evaluation. *Id.* at ¶ 26; *See also*, Def. 56.1 at ¶ 58. Plaintiff further alleged that Latunji denied her medical education trainings. *Id.* at ¶¶ 25, 27, 31. Lastly, Plaintiff alleged that Latunji and Balilo falsely accused Plaintiff of behaving unprofessionally on September 30, 2014 and February 3, 2014. *Id.* at ¶¶ 24, 29. Plaintiff and Corizon reached a settlement and, on August 18, 2016, and the action was dismissed with prejudice based on the parties' stipulation of dismissal. *See*, *Bhatti*, Case Dkt. No. 15-cv-05044, Dkt. Entry Nos. 19-21. Latunji testified that he was not aware of Plaintiff's lawsuit against Corizon. Def. 56.1 at ¶ 61.

## II. Transition from Corizon to PAGNY

In 2015, New York City decided to terminate its contract with Corizon effective January 1, 2016 and began the process of transferring the medical oversight at Rikers to New York City Health + Hospitals ("Health + Hospitals"). Def. 56.1 at ¶ 64. In August 2015, Dr. Ross MacDonald ("MacDonald") became the Chief of Medicine at Health + Hospitals. *Id.* at ¶ 65. As

5

part of the transition, Health + Hospitals was responsible for employing the management staff at Rikers, while PAGNY was responsible for employing the physicians at Rikers. *Id.* Initially, PAGNY did not extend Plaintiff an offer of employment under the new model based on concerns about Plaintiff's teamwork and communication skills, as well as her general attitude and unwillingness to accommodate the needs of the clinic. *Id*. at ¶¶ 67-69. On November 20, 2015, a representative from Doctors Council, Plaintiff's union, notified Plaintiff that she did not receive an offer from PAGNY and asked her to provide a response to the disciplinary notices she had received from Corizon on July 25, 2014 and August 18, 2014, which formed the basis of PAGNY's decision not to hire her. *Id*. at ¶ 70.

On December 9, 2015, Plaintiff, through her union, appealed the non-offer of employment. *Id.* at ¶ 71. Dr. MacDonald and the assistant chiefs at Health + Hospitals, along with Latunji, reviewed the appeal and decided to offer Plaintiff a physician position with a probationary period of one year. *Id*. at ¶ 74. Dr. MacDonald felt that the staff could work with Plaintiff because the concerns about her did not involve her clinical care. *Id*. at ¶ 73. Out of the four appeals filed by Doctors Council for Plaintiff and others, only Plaintiff prevailed and received employment with PAGNY. *Id.* at ¶ 71.

On December 22, 2015, Dr. Patricia Yang ("Yang"), Health + Hospitals Correctional Health Services Senior Vice President, emailed Nathaniel Dickey ("Dickey"), Correctional Health Services Assistant Director of Strategic Initiatives, asking to set up quarterly meetings to review performance evaluations of the fifteen probationary employees, including Plaintiff. Def. 56.1 at ¶ 76. On December 28, 2015, the Chief Executive Officer of PAGNY, the Chief Human Resources Officer of PAGNY, and the President of Doctors Council signed a letter confirming their mutual understanding that Plaintiff was offered employment on the condition that she would be subjected

6

to a one-year probationary period with quarterly performance evaluations. *Id*. at ¶ 77. The Memorandum of Agreement between PAGNY and Doctors Council, effective January 1, 2016, stated that "[a]ll employees shall maintain their respective date of hire and seniority for all purposes, including any probationary period, except where agreed to otherwise by the parties." *Id.* at ¶ 78; *See also*, PAGNY Offer of Employment Documents, Ex. O to Blair Decl., Dkt. Entry No. 24-15, at 5.

On January 1, 2016, Plaintiff began her employment with PAGNY. Def. 56.1 at ¶ 80. She remained assigned to OBCC under the supervision of Latunji. *Id.* Balilo became the Health + Hospitals Associate Director and continued to work with Plaintiff at OBCC. *Id.* at ¶ 88.

### III. Plaintiff's Evaluations at PAGNY

On April 13, 2016, Plaintiff received her first quarterly evaluation from PAGNY, covering the period between January 1, 2016 and March 31, 2016. *See*, Documents Concerning Plaintiff's Evaluations at PAGNY ("PAGNY Evaluations Docs."), Ex. S to Blair Decl., Dkt. Entry No. 24-19, at 5-8. Latunji and Dr. MacDonald signed the evaluation and gave Plaintiff an overall rating of "Below Standard." *Id.* at 7-8. In the "Summary" section of the evaluation, Latunji noted that "[t]he rating for this probationary quarter is below standard because Dr. Bhatti continues to demonstrate critical deficiencies in working as part of the clinic based team. She makes minimal effort at communication with her peers and supervisors and her communication is often resentful and unprofessional. Specific incidents are enumerated in the attached supporting documentation." *Id.* at 7. In his comment section, MacDonald remarked that, "I have conferred with Latunji on the content of this evaluation and agree with the findings and plan of action. Despite sound clinical judgment, Dr. Bhatti displays critical deficiency in the area of teamwork, accepting instruction,

communication and interdisciplinary coordination and cooperation." *Id.* at 8. Plaintiff signed the receipt of the evaluation on April 18, 2016. *Id.*

On April 21, 2016, Plaintiff submitted her rebuttal to the April 13, 2016 evaluation, addressed to the Chief Human Resources Officer of PAGNY. *Id.* at 10. She disagreed with "the comments regarding relations with patients/public, judgment and reliability." *Id.* She also contested that she had problems communicating or cooperating with the OBCC personnel. *Id.* Additionally, she provided her own account of events that took place on January 26, 2016, January 19, 2016, February 16, 2016, March 17, 2016, and March 25, 2016 regarding the delay in patient care, a patient complaint against her, and her interactions with nursing staff and Latunji. *Id.* at 10-11. Plaintiff alleged that Latunji "raised his voice" at her on January 26, 2016 about a medication order. *Id.* at 10.

On October 9, 2016, Plaintiff received her second evaluation from PAGNY, covering the period between April 1, 2016 and June 30, 2016. *See*, *Id.* at 12-15. Latunji and MacDonald signed the evaluation and gave an overall rating of "Below Standard." *Id.* at 14-15. In the "Summary" section of the evaluation, Latunji stated that, "[t]he rating for this probationary quarter is below standard because Dr. Bhatti continues to demonstrate critical deficiencies in working as part of the clinic based team. She makes minimal effort at communication with her peers and supervisors and her communication is often resentful and unprofessional." *Id.* at 14. Dr. MacDonald did not provide any additional comments. *Id.* at 15. Plaintiff signed the receipt of the evaluation on October 19, 2016. *Id.*

On October 28, 2016, Plaintiff submitted her rebuttal to both the April 13, 2016 and October 19, 2016 evaluations, addressed to the Chief Human Resources Officer of PAGNY. *Id.* at 18. She provided remarks on all seven components of the evaluation, which included,

8

"Knowledge of Job," "Quality of Work," "Quantity of Work," "Relationship with Patient/Public," "Judgment," "Adaptability," and "Reliability." *Id.* She further commented that "[p]oor work conditions, disorganized workflow and staff shortage reaching crisis level has been noted in detail by other practitioners (email sent to management). While problems are well documented, solutions are not. How is it fair to call one physician unprofessional and below standard? If all staff members know the importance of every one else's position, it can create great relationships and achieve the goals for all areas of patient's needs." *Id.* at 19. There is no evidence that Plaintiff's rebuttals altered the evaluations.

## IV. Plaintiff's Termination from PAGNY

In a letter dated December 22, 2016, Ms. Martha Vormittag, the Director of Human Resources & Administration at PAGNY, notified Plaintiff that she did not pass the "agreed-upon probation period" with PAGNY. Pl.'s Termination Letter, Ex. T to Blair Decl., Dkt. Entry No. 24-20. The letter further stated that, as of December 22, 2016, Plaintiff was no longer employed by PAGNY. *Id.* MacDonald testified that, during his meetings with Plaintiff concerning her performance, she often blamed other individuals, including Latunji and DOC staff, and did not engage in any self-reflection. Def. 56.1 at ¶ 125. MacDonald further stated that the decision to recommend the termination of Plaintiff's employment during her probationary period was a collaboration between him and the Human Resources leadership of Correctional Health Services. *Id.* at ¶ 126.

## V. Plaintiff's Claim

According to Plaintiff, prior to filing the instant action, she had filed a charge of discrimination with the EEOC, which then issued her a right to sue letter on March 2, 2018. Compl. at ¶ 4. Plaintiff never attached the right to sue letter to the Complaint nor provided the

9

letter as part of her response to the summary judgment motion. As such, it is not clear what that EECO discrimination charge entailed or whether it is related to the instant action as this action concerns only retaliation, not discrimination, relating back to actions alleged to have occurred in 2014 and 2015. *See*, Pl. Mem. at 1 n.1.

Plaintiff claims that PAGNY continued, or allowed to continue, the pattern of retaliatory conduct for her complaints of discrimination against her superiors at both Corizon and PAGNY. Compl. at ¶ 34. Plaintiff alleges that PAGNY retaliated against her for filing the EEOC charge and the *Corizon* lawsuit by: (1) initially not offering her a position with PAGNY; (2) issuing her two "negative" evaluations; and (3) terminating her employment with PAGNY. *See*, Pl. Opp'n at 16-19. Defendant argues that Plaintiff's retaliation claim must be dismissed for failure to make a *prima facie* case. *See*, *generally*, Def. Mem.; Def. Reply.

## **LEGAL STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court "must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citations omitted). A fact is "material" if it "might affect the outcome of the suit under governing law." *Id.* (internal quotation marks and citations omitted). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant bears the "difficult burden" of establishing that there are no genuine issues of material fact such that summary judgment is appropriate. *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (citation omitted). Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks, citation, and emphasis omitted). The nonmoving party may not rely on "[c]onclusory allegations, conjecture, and speculation." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted).

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried[.]" *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986) (citations omitted); *See also, Jeffreys*, 426 F.3d at 553 ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.") (internal quotation marks and citation omitted). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In the context of employment discrimination and retaliation claims, courts must make special considerations. Specifically, where direct evidence of an employer's retaliatory intent is not readily discernible, district courts must "carefully scrutinize[]" the available evidence for "circumstantial proof[.]" *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Moreover, "summary judgment may not be granted simply because the court

11

believes that the plaintiff will be unable to meet his or her burden of persuasion at trial . . . [t]here must be a lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 54 (2d Cir. 1998). Nevertheless, these special considerations do not reduce the pleading requirements imposed upon plaintiffs necessary to defeat summary judgment motions. *See*, *Baldwin v. Goddard Riverside Cmty. Ctr.*, 53 F. Supp.3d 655, 667 (S.D.N.Y. 2014).

## DISCUSSION

### I. Jurisdiction

Before filing a Title VII claim, a plaintiff must exhaust her administrative remedies by satisfying two conditions: (1) timely filing a charge of discrimination with the EEOC or an equivalent state or city agency, and (2) timely filing a suit in federal court upon receipt of a right to sue notice from the EEOC. 42 U.S.C. § 2000e-5(e)-(f)(1); *See also*, *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) ("As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC.") (citations omitted). A district court only may review Title VII claims that were either contained in the EEOC charge or are "reasonably related" to claims in the charge. *DeBerry v. Brookdale Univ. Hosp. and Med. Center* (citing *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam).

Plaintiff alleges that, in 2018, prior to filing the instant action, she filed a charge of discrimination with the EEOC, which then purportedly issued her a right to sue letter on March 2, 2018. Compl. at ¶ 4. She did not allege that the EEOC complaint also addressed the retaliation claim she now makes. However, Plaintiff neither attached the right to sue letter to the Complaint

12

nor did she provide the letter as part of the summary judgment motion. The Court cannot determine whether the 2018 right to sue letter, if it exits, concerns this action. Notably, Plaintiff has not offered any information as to whether Plaintiff's retaliation claim here is reasonably related to her 2018 EEOC claim. Instead, Plaintiff's retaliation claim concerns the first EEOC claim she filed and the ensuing right to sue letter that served as the basis for her initial lawsuit filed in this district in 2015. As such, whether or not Plaintiff filed an EEOC claim in 2018 is irrelevant to the issues before the Court. The Court finds that, under the circumstances presented here, the Court has jurisdiction over the retaliation claim as it relates back to the initial discrimination claims filed in 2014 and 2015.

## II.     Title VII Claim

Title VII forbids an employer from retaliating against an employee for, *inter alia*, complaining of employment discrimination prohibited by Title VII. "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

Plaintiff testified that she does not believe Latunji or MacDonald discriminated against her because of her gender. Pl. 56.1 at ¶ 113. As such, the present action concerns Defendant's alleged retaliatory conduct only, not any alleged underlying gender discrimination. To prevail on her retaliation claim, Plaintiff need not prove that her underlying complaint of discrimination had merit, "but only that it was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (internal quotation marks and citations omitted).

13

Title VII retaliation claims are analyzed pursuant to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* (citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)). Under the first step of the framework, Plaintiff must establish a *prima facie* case of retaliation by showing: (1) participation in a protected activity; (2) Defendant's knowledge of the protected activity; (3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action. *Id.* at 844 (citation omitted). Plaintiff's burden at this first step is *de minimis* and "the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Hicks*, 593 F.3d at 164 (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)) (internal quotations marks omitted).

With respect to the first element, the term "protected activity" refers to "action taken to protest or oppose statutorily prohibited discrimination.'" *Fraser v. MTA Long Island R.R.*, 295 F. Supp.3d 230, 270 (E.D.N.Y. 2018) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)) (internal quotation marks omitted). For a complaint to qualify as protected activity, the plaintiff must have a "good faith, reasonable belief" that she is opposing an unlawful practice. *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (internal quotation marks and citation omitted). In the instant action, Defendant does not dispute that Plaintiff participated in protected activities by filing: (1) an EEOC charge of gender discrimination on April 18, 2014, (2) a formal response to her 2014 evaluation on January 26, 2015, and (3) the *Corizon* lawsuit on August 28, 2015. Def. Mem. at 5.

However, Defendant contends that Plaintiff has failed to satisfy the second element, that Defendant had knowledge of Plaintiff's protected activities. *Id*. Plaintiff presents two separate

14

arguments for satisfying the knowledge requirement. First, Plaintiff argues that PAGNY had "general corporate knowledge" of Plaintiff's protected activities because Corizon was its predecessor at Rikers. *See*, Pl. Opp'n at 13. Second, Plaintiff argues that Latunji had actual knowledge of the protected activities. *Id.* The Court finds that Plaintiff's arguments lack merit.

The Second Circuit Court of Appeals has held that, in satisfying the second element, all that is required is "general corporate knowledge that the plaintiff has engaged in a protected activity" and the knowledge requirement "is met if the legal entity was on notice." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116, 1113-14 (2d Cir. 2000). The evidence here does not support that PAGNY had corporate knowledge of the protected activities merely by succeeding Corizon's role at Rikers. Plaintiff cites *Kessler v. Westchester Cnty. Dep't of Soc. Servs.,* 461 F.3d 199 (2d Cir. 2006) and *Alston v. N.Y.C. Transit Auth.,* 14 F. Supp.2d 308 (S.D.N.Y. 1998) as support, but her reliance on these cases is misplaced. *See*, Pl. Opp'n at 13. In *Kessler*, the Second Circuit found that general corporate knowledge existed because the defendant corporation made submissions in opposition to the plaintiff's discrimination complaint. *See*, *Kessler*, 461 F.3d at 210. Unlike *Kessler*, here there is no evidence in the record that PAGNY responded to either the EEOC charge or the *Corizon* lawsuit complaint. Plaintiff here filed the EEOC charge and lawsuit against Corizon, not PAGNY, before PAGNY became her employer. *See*, Def. 56.1 at ¶¶ 33, 60, 64-65.

Moreover, whereas *Alston* concerned a single entity's corporate knowledge of the plaintiff's EEOC complaint, this case involves two distinct entities. *See*, *Alston*, 14 F. Supp.2d at 311. Without citing to any evidence or legal authority, Plaintiff claims that PAGNY had corporate knowledge of the EEOC charge and the *Corizon* lawsuit because "almost all of the staff, administrative or otherwise" under Corizon subsequently worked for PAGNY. Pl. Opp'n at 13.

15

Such a conclusory assertion is not sufficient to meet the *de minimis* burden of proving that PAGNY, a separate legal and corporate entity from Corizon, had knowledge of the EEOC charge or *Corizon* lawsuit. The record contains insufficient information as to whether any personnel other than Plaintiff and Latunji transferred from Corizon to PAGNY. *See*, Def. 56.1 at ¶ 65. Once Corizon's contract ended at Rikers, Health + Hospitals employed the management staff, and PAGNY employed the physicians. *Id.* For example, as part of the transition, Balilo became a Health + Hospitals employee as the Associate Director. *Id.* at ¶ 88. Thus, there is no evidence for a reasonable jury to find that Corizon's corporate knowledge of Plaintiff's protected activities was passed on to PAGNY.

Plaintiff further argues that, "as the lawsuit against Corizon was settled, through counsel, it cannot be said that they were unaware of the lawsuit." Pl. Opp'n at 13. This argument is meritless. Plaintiff fails to explain how her settlement with Corizon proves that PAGNY had knowledge of the *Corizon* lawsuit. Consequently, the Court finds that Plaintiff has failed to establish PAGNY had corporate knowledge of the protected activities merely by succeeding Corizon.

Plaintiff also fails to establish that Latunji had knowledge of the protected activities. *See*, Pl. Opp'n at 13-14. Latunji testified that he was not aware of the EEOC charge. *See*, Def. Mem. at 5; *See also*, Def. 56.1 at ¶ 34. A jury can find retaliation even if Latunji denies direct knowledge of Plaintiff's protected activities, "so long as the jury finds that the circumstances evidence knowledge of the protected activities." *Gordon*, 232 F.3d at 117. However, the record here lacks any evidence to infer reasonably that Latunji was aware of the EEOC charge. The sole fact that Plaintiff mentioned Latunji as a member of Corizon's senior management staff in the EEOC charge is inadequate to demonstrate that Latunji knew about the charge. *See*, EEOC Charge at 1. The

16

EEOC charge was against Corizon, not Latunji.  There is no evidence that Corizon had informed or questioned Latunji about the EEOC charge.  Additionally, as Plaintiff has conceded, Latunji was not involved in the Physician Central Intake position selection process, which was the basis for the EEOC charge, and she never discussed the charge with Latunji.  *See*, Pl. Dep. at 50.  Plaintiff has not presented any case law, and the Court is unaware of any precedent, that makes mere mention in an EEOC charge sufficient to establish the knowledge requirement in a retaliation claim.

Moreover, there is insufficient evidence to infer that Latunji was aware of Plaintiff's rebuttal to her 2014 evaluation, in which she specifically mentioned that she received the "Below Average" ratings in retaliation for filing the EEOC charge.  *See*, Pl.'s Rebuttal to 2014 Corizon Evaluation, Ex. M. to Blair Decl.  Although Latunji completed the evaluation, Plaintiff addressed the rebuttal to the Director of Human Resources at Corizon, not Latunji.  *Id.*; *See also*, Corizon Evaluations, Ex. G to Blair Decl., at 24-25.  Despite completing discovery in this case, Plaintiff has not provided any evidence that the Director of Human Resources shared the rebuttal with Latunji or that it was a normal procedure for the Director to share rebuttals with supervisors who completed the evaluations.

Furthermore, the Court finds that Plaintiff has not presented any evidence for the jury to infer reasonably that Latunji knew about the *Corizon* lawsuit.  While the complaint in the lawsuit contained allegations involving Latunji's conduct, he was not a named party.  A review of the docket in the *Corizon* case shows that little or no discovery was conducted in that case as the parties settled early on.  *See*, *Bhatti v. Corizon Health, Inc.*, Case Dkt. No. 15-cv-05044 (LDH) (CLP), Dkt. Entry Nos. 18-21.  It is apparent that no depositions were conducted, and the record

17

here lacks any evidence that Latunji was aware of the *Corizon* lawsuit by any other means. Thus, no knowledge about the lawsuit can be imputed to PAGNY either.

Plaintiff contends that the Court must be skeptical of Latunji's "self-serving testimony" that he was unaware of the EEOC charge and *Corizon* lawsuit because he is not credible. Pl. Opp'n at 13-14. Plaintiff bases this contention on several incidents where Latunji allegedly provided contradictory testimony. *Id.* However, the Court finds that these allegations are not supported by the record. Additionally, as discussed above, Plaintiff has not presented any facts to counter Latunji's testimony that he was not aware of the EEOC charge and *Corizon* lawsuit. The Court declines to discount Latunji's testimony based solely on Plaintiff's unsupported characterization of it as "self-serving." Plaintiff further contends that Latunji knew about the EEOC charge and *Corizon* lawsuit because the adverse employment actions closely followed the protected activities in time. *Id.* at 14. This argument is flawed. In order for Plaintiff to successfully assert that Latunji issued the "Below Average" rating and counseling memoranda as retaliation, Plaintiff first must establish that he knew about Plaintiff's protected activities. As discussed above, Plaintiff fails to do so. In sum, the Court finds that Plaintiff has failed to satisfy the second element of her *prima facie* case because she has not presented any evidence that either PAGNY or Latunji had knowledge of Plaintiff's protected activities. Therefore, Plaintiff's Title VII retaliation claim must be dismissed for failure to establish the *prima facie* case for retaliation.

### III.   NYSHRL and NYCHRL Claims

NYSHRL retaliations claims are analyzed under the same standard as Title VII claims. *See*, *McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d Cir. 2001). As such, Plaintiff's NYSHRL claim also requires her to establish the knowledge element as part of the *prima facie*

18

case. Since the Court finds that Plaintiff has failed to demonstrate that Defendant had knowledge of Plaintiff's protected activities, her NYSHRL claim is dismissed.

A retaliation claim under NYCHRL is analyzed separately and independently from any federal and state law claims. *See*, *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc*., 715 F.3d 102, 109 (2d Cir. 2013). To prevail on a retaliation claim under the NYCHRL, a plaintiff must show (1) "that she took an action opposing her employer's discrimination" and (2) "that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp.2d 816, 838 (S.D.N.Y. 2013) (quoting *Mihalik*, 715 F.3d at 112) (internal quotation marks omitted). Although a retaliation claim under NYCHRL is interpreted broadly, a plaintiff is not absolved from putting forth evidence tending to show a causal connection between the plaintiff's protected activity and alleged adverse employment action. *See*, *Id.* at 862. Here, as discussed in Section I, Plaintiff has not put forth sufficient evidence to show that Defendant had knowledge of her protected activities. As such, she fails to satisfy the requisite element to establish the causal link between the protected activities and the adverse employment actions. Therefore, Plaintiff's retaliation claim under NYCHRL also is dismissed.

## CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is granted in its entirety and this action is dismissed with prejudice.

SO ORDERED.

Dated: Brooklyn, New York
      September 7, 2021                                                                                     _____/s/_____
                                                                                                           Dora L. Irizarry
                                                                                 United States District Judge